Filed 12/22/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>HARRY LLOYD HOWARD,<br><br>  Defendant and Appellant. | G059213<br><br>(Super. Ct. Nos. C77443, M-18531)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Kimberly Menninger, Judge. Reversed and remanded as directed.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

\*       \*       \*

Broadly speaking, a *Franklin* proceeding allows youth offenders sentenced to long prison terms an opportunity to introduce into the record mitigating evidence relating to their youth. As explained in the case for which it is named, *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), the purpose of this proceeding is to preserve such evidence for consideration at future parole hearings. A *Franklin* proceeding can be requested by written motion. The trial court may deny the request if it determines no relevant, noncumulative evidence likely exists. But before doing so, the court must provide the defendant a meaningful opportunity to describe the evidence he or she seeks to preserve in the record.

Here, defendant Harry Lloyd Howard filed a motion for a *Franklin* proceeding three decades after committing the underlying offense. By that time, he had already introduced youth-related evidence at a prior parole hearing, but he had never requested a *Franklin* proceeding. The court denied his motion on its face because it failed to show what additional evidence merited preservation. We find the court prematurely denied Howard's request. His motion met the legal requirements to initiate the *Franklin* process. As such, the court should have provided Howard an opportunity to explain the evidence he sought to introduce before determining whether a *Franklin* proceeding was warranted. We reverse the order and remand with instructions. [1]

---

[1] "*Franklin* processes are more properly called 'proceedings' rather than 'hearings.' A hearing generally involves definitive issues of law or fact to be determined with a decision rendered based on that determination. [Citations.] A proceeding is a broader term describing the form or manner of conducting judicial business before a court. [Citations.] While a judicial officer presides over a *Franklin* proceeding and regulates its conduct, the officer is not called upon to make findings of fact or render any final determination at the proceeding's conclusion. Parole determination [sic] are left to the Board." (*In re Cook* (2019) 7 Cal.5th 439, 449 fn. 3 (*Cook*).)

I

FACTS AND PROCEDURAL HISTORY

A. *Legal Background*

The criminal justice system has evolved in the last decade with respect to its punishment of youth offenders. In *Graham v. Florida* (2010) 560 U.S. 48, 82 (*Graham*), the Supreme Court found the imposition of a life sentence without parole on a nonhomicide juvenile offender violated the Eighth Amendment. Such a sentence "is not appropriate in light of a juvenile nonhomicide offender's capacity for change and limited moral culpability." (*Id*. at p. 74.) Two years later, the Supreme Court expanded upon *Graham*. If found unconstitutional a mandatory life sentence without parole that was imposed on a juvenile after a homicide conviction. (*Miller v. Alabama* (2012) 567 U.S. 460, 465 (*Miller*).) Among other things, the Court explained "children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform . . ., 'they are less deserving of the most severe punishments.'" (*Id*. at p. 471.) A few months after *Miller*, our state Supreme Court found a juvenile defendant's 110-year sentence before any chance of parole "amount[ed] to the functional equivalent of a life without parole sentence," which violated the principles set forth in *Graham* and *Miller*. (*People v. Caballero* (2012) 55 Cal.4th 262, 267-268 (*Caballero*).)

"To bring juvenile sentencing in California into conformity with *Graham*, *Miller* and *Caballero*, the Legislature enacted Senate Bill No. 260 (2013-2014 Reg. Sess.) [(SB 260)], effective January 1, 2014, adding sections 3051 and 4801, subdivision (c), to the Penal Code.[2] These provisions require the Board of Parole Hearings (the Board), with certain limited exceptions, to conduct a youth offender parole hearing no later than a juvenile offender's 25th year of incarceration (and at earlier points depending

_____

2 All further undesignated statutory provisions are to the Penal Code.

3

on the offender's 'controlling offense') [citation] and, when considering parole eligibility for these youth offenders, to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity.'" (*People v. Sepulveda* (2020) 47 Cal.App.5th 291, 298.) Generally, youth offenders include persons who are 25 years and younger at the time of the offense. (§ 3051, subd. (a)(1).)

After the enactment of SB 260, our state Supreme Court decided *Franklin*. In *Franklin*, the defendant was convicted of first degree murder. Prior to the enactment of SB 260, he was sentenced to life in prison with the possibility of parole after 50 years. (*Franklin*, *supra*, 63 Cal.4th at p. 268.) The defendant was 16 years old at the time of the offense, and he appealed his sentence as unconstitutional under *Miller* and *Caballero*. (*Id*. at pp. 272, 275-276.) The Court found that due to the passage of SB 260, the defendant was now entitled "to a parole hearing during his 25th year in prison," which "render[ed] moot any infirmity in [his] sentence under *Miller*." (*Id*. at pp. 276-277.)

However, the Court observed it was "not clear whether [the defendant] had sufficient opportunity to put on the record the kinds of information that sections 3051 and 4801 deem relevant at a youth offender parole hearing." (*Franklin*, *supra*, 63 Cal.4th at p. 284.) So, it "remand[ed] the matter to the trial court for a determination of whether [the defendant] was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing." (*Ibid*.) If not, he could "place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing." (*Ibid*.) Likewise, the prosecution could also "put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Ibid*.)

This procedure, now known as a *Franklin* proceeding, provides the parties an opportunity "to make an accurate record of the juvenile offender's characteristics and

4

circumstances at the time of the offense so that the Board, years later, may properly discharge its obligation to 'give great weight to' youth-related factors [citation] in determining whether the offender is 'fit to rejoin society' despite having committed a serious crime 'while he was a child in the eyes of the law.'" (*Franklin*, *supra*, 63 Cal.4th at p. 284.) For youth offenders, the Board must consider youth-related factors at all parole hearings, not just youth offender parole hearings. (*In re Brownlee* (2020) 50 Cal.App.5th 720, 725.)

Though *Franklin* involved a direct appeal of a sentence, our Supreme Court later clarified youth offenders can obtain a *Franklin* proceeding even if their sentences are final.  (*Cook*, *supra*, 7 Cal.5th at p. 451.)  In such a scenario, the offender can request a *Franklin* proceeding by filing a motion (*Franklin* motion). (*Id.* at pp. 458-459.) We discuss the required contents of a *Franklin* motion in further detail below.

## B.  Defendant's Conviction and Prior Parole Hearings

The material facts in this case are undisputed. The underlying offense occurred in 1989, when Howard was 25 years old. While under the influence of various drugs and alcohol, Howard went to a liquor store and requested change. The storeowner refused, and an argument ensued. The storeowner pushed Howard outside the store.  In the parking lot, Howard struck the storeowner in the head multiple times with a skateboard, causing him to collapse. Howard then attempted to hide the storeowner's body behind a vehicle and fled. The storeowner later passed away at the hospital. A jury convicted Howard of first degree murder, and he was sentenced to 25 years to life in prison.

Howard had parole hearings in 2009 and 2012 but was denied both times. His first parole hearing following SB 260's enactment occurred in October 2019. As required by sections 3051 and 4801, the Board considered evidence relating to Howard's youth at the 2019 hearing.  Among other things, Howard testified his parents divorced

when he was young, and his mother subsequently married an alcoholic and abusive man. The latter marriage also ended in divorce, and Howard began living with his maternal grandparents along with his mother and sister. Howard stated he was bullied in elementary school, causing him to drop out of school in sixth grade. He began hanging out with some older kids on the streets and using drugs. He started drinking alcohol and smoking marijuana when he was around 10 years old. In his 20s, he used stronger drugs like cocaine and methamphetamine. He eventually left Texas, where he grew up, and moved to California where he had no family support.

Howard testified that around the time of the murder, his life was coming apart. He had lost his job and his car. He was behind on rent and had started selling cocaine. He tried to buy drugs on the day of the murder. But there was an altercation between him and the dealer, and the dealer pushed him down a set of stairs. This experience infuriated him, Howard explained, because it evoked memories of being bullied as a child. He then channeled that rage toward the storeowner after he refused to provide change.

In connection with the parole hearing, Howard was examined by a psychologist, retained by the Board, who applied the relevant youth offender considerations. She noted Howard had no major mental disorders, but he met the criteria for antisocial personality disorder and showed signs of narcissism. She further observed Howard's personality was "not well-suited for conceding to authority," and that compliance with community supervision might be challenging for him. She concluded Howard represented a moderate risk for violence if released.

In making its decision, the Board expressly considered Howard's status as a youth offender and the mitigating evidence he had provided. Still, the Board denied him parole. It found the mitigating factors were "outweighed by the circumstances that would tend to show [Howard] is unsuitable at this time [for parole] and would pose an unreasonable risk . . . to public safety."

6

## C. Defendant's Franklin Motion

In June 2020, Howard, unrepresented by counsel, filed a petition for writ habeas corpus, claiming the Board had improperly applied the youth factors. He also filed a *Franklin* motion. The motion stated Howard committed the crime when he was 25 years old and sought "the opportunity to establish a record of factors that are based on his 'youthful traits' and diminished culpability – present when the crime occurred . . . where he showed signs of immaturity and an under developed sense of responsibility, which is relevant to a future parole hearing consideration and [Howard's] capacity for change under Penal Code § 3051." It cited the basis for the motion as sections 3051 and 4801, *Franklin*, and *Cook*.

In a single order, the trial court denied Howard's habeas corpus petition and *Franklin* motion on their face. As to the *Franklin* motion, the court found "in this case a substantial amount of information pertaining to the Youth Offender factors is already present in the record. [A]t the hearing the Board heard and considered a great deal of information concerning petitioner's childhood and adolescence, including evidence pertaining to early use of alcohol and drugs, parental neglect and bullying at the hands of peers. Petitioner fails to demonstrate what additional information, 30 years later, could be provided that would assist the Board in assessing his suitability for parole."

Howard appeals the trial court's denial of his request for a *Franklin* proceeding.[3] We agree the court improperly denied his motion and reverse and remand this matter with instructions.

---

[3] After the trial court denied his habeas corpus petition, Howard petitioned this court for writ of habeas corpus. We denied his petition (G059306).

II

DISCUSSION

The purpose of a *Franklin* proceeding is to preserve mitigating evidence relating to an offender's youth for future parole hearings. (*People v. Sepulveda*, *supra*, 47 Cal.App.5th at p. 300.)  The proceeding "allow[s] the offender to assemble evidence 'at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away.'" (*Cook*, *supra*, 7 Cal.5th at p. 459.)

As an evidence preservation mechanism, a *Franklin* proceeding is typically most effective when conducted shortly after conviction. Still, our Supreme Court has indicated a *Franklin* proceeding may be held years later: "Some offenders who file [*Franklin* motions] in the trial court may have spent a decade or more in prison. Some may have even come before the Board for a youth offender parole hearing." (*Cook*, *supra*, 7 Cal.5th at p. 459.) When determining whether to allow a *Franklin* proceeding, the court may consider whether it "is likely to produce fruitful evidence considering such factors as the passage of time and whether the offender has already benefitted from the factfinding procedures set forth in section 3051, subdivision (f)(1) and (2) with the assistance of appointed counsel [citations]." (*Ibid*.)

Here, based solely on Howard's *Franklin* motion, the court concluded there was sufficient youth-related evidence in the record and that Howard had failed to show what other relevant evidence could be preserved. [4]  But, as set forth below, the requirements for a *Franklin* motion are minimal. The motion need not describe in detail the evidence the offender seeks to preserve. By denying Howard's motion on its face, the

---

[4] Howard labeled his motion as a "'Petition for Recall of Sentence in Consideration of a *Franklin* hearing.'" The court's order noted a *Franklin* proceeding does not involve a "'recall of sentence' or resentencing."  But it does not appear this mislabeling affected the court's ruling. To the extent the court also denied the motion on this ground, this was improper.  (*People v. Lipptrapp* (2021) 59 Cal.App.5th 886, 894-895 (*Lipptrapp*).)

8

court failed to provide Howard with an adequate opportunity to demonstrate whether a *Franklin* proceeding was warranted.

The framework of a *Franklin* motion is set forth in *Cook*. "[T]he proper avenue [to request a *Franklin* proceeding] is to file a motion in superior court under the original caption and case number, citing the authority of section 1203.01 and [*Cook*]. The motion should establish the inmate's entitlement to a youth offender parole hearing and indicate when such hearing is anticipated to take place, or if one or more hearings have already occurred." (*Cook*, *supra*, 7 Cal.5th at pp. 458-459.) Nothing in *Cook* indicates the motion must describe with precision the evidence the offender seeks to introduce. Moreover, as this court recently explained, "[t]he court's commentary [in *Cook*] about what a motion *should include* is not the same as creating mandatory pleading requirements." (*Lipptrapp*, *supra*, 59 Cal.App.5th at p. 896.) We found there are no mandatory pleading requirements for a *Franklin* motion, and the required showing to initiate the process for a *Franklin* proceeding is minimal: "[d]ue to the limited resources generally available to inmates, the *Cook* court reasonably envisioned *a simple pleading mechanism to get the process started*." (*Ibid*., italics added.)

In *Lipptrapp*, the defendant was sentenced to a determinate 30-year prison term for various crimes he committed in 1995. Nearly 25 years later, he filed a *Franklin* motion. (*Lipptrapp*, *supra*, 59 Cal.App.5th at p. 889.) We found the defendant's motion was sufficient to initiate the process for a *Franklin* proceeding. First, it "include[d] the relevant criminal case information and pertinent legal authority." (*Id*. at pp. 893-894.) Thus, it clearly notified the trial court of "the basis for the motion as well as the cases giving the trial court authority to conduct evidence preservation proceedings." (*Ibid*.) Second, it "established his eligibility for a section 3051 youth offender parole hearing." (*Id*. at p. 894.) In particular, the defendant stated he was 25 years old when charged with the underlying offense. He further "discussed legal principles concerning youthful offenders, the nature and purpose of youth offender parole hearings, the goal of section

9

3051, and what evidence was relevant for a *Franklin* proceeding. With respect to this last issue, [the defendant] asserted his trial attorney 'did not fully investigate and present' evidence concerning his juvenile characteristics and other youth-related factors......."[5] (*Ibid*.)

Based on *Cook* and *Lipptrapp*, Howard's *Franklin* motion provided enough information to initiate the process for a *Franklin* proceeding. Howard's motion was filed under the original caption and case number. It stated he was 25 years old at the time of the offense. It cited sections 3051 and 4801, *Franklin*, and *Cook* as the basis for relief and discusses legal principles relating to youthful offenders. The motion also established Howard had recently had a parole hearing. With respect to the relevant evidence, the motion stated Howard sought "the opportunity to establish a record of factors that are based on his 'youthful traits' and diminished culpability . . . where he showed signs of immaturity and an under developed sense of responsibility." Likewise, it asserted Howard's intent "to place on the record relevant mitigating evidence to support an established record of *new and additional evidence* for the Board to consider in a future hearing." (Italics added.)

While Howard's *Franklin* motion did not describe the specific evidence he sought to introduce, neither *Cook* nor *Lipptrapp* mandate such information. And requiring a defendant to do so would subvert the "simple pleading mechanism" envisioned by *Lipptrapp*. (See *Lipptrapp*, *supra*, 59 Cal.App.5th at p. 896.) In addition, "*Franklin* mandates an opportunity for evidence preservation." (*Cook*, *supra*, 7 Cal.5th at p. 459.) Thus, we err on the side of ensuring Howard is given a meaningful opportunity to place pertinent evidence in the record. Although he introduced evidence

---

[5] While *Lipptrapp* noted several exhibits were attached to the defendant's *Franklin* motion, the opinion only identifies one: an abstract of judgment showing defendant's age at the time of the offense and prison sentence. (*Lipptrapp*, *supra*, 59 Cal.App.5th at p. 894.) Thus, it does not appear the other documents were material to the court's ruling.

relating to his youth at his 2019 parole hearing, it is unclear whether there is any other relevant, noncumulative evidence he seeks to preserve for his next hearing. (See *ibid*.) As such, after filing the *Franklin* motion, Howard should have been given an opportunity to describe the evidence he sought to introduce. It was premature for the court to determine based on his motion alone that he had not shown "what additional information . . . could be provided that would assist the Board in assessing his suitability for parole."

To clarify, *Franklin* only requires a defendant be given an *opportunity* to place additional evidence in the record. (*Cook*, *supra*, 7 Cal.5th at p. 459.) A legally sufficient *Franklin* motion does not automatically guarantee a defendant the right to do so. Rather, such a motion only *initiates* the process for a *Franklin* proceeding. Based solely on the motion, the trial court may immediately find a *Franklin* proceeding is warranted. However, the trial court may also "'exercise its discretion to conduct this process efficiently, ensuring that the information introduced is relevant, noncumulative, and otherwise in accord with the governing rules, statutes, and regulations.' [Citation.] The court may, for example, require an offer of proof regarding the evidence the offender seeks to present, so that it can determine whether such evidence is relevant to youth-related factors and meaningfully adds to the already available record. It may also determine whether testimony is 'appropriate' [citation], or if other types of evidentiary submissions will suffice." (*Cook*, at p. 459.) After allowing a defendant an opportunity of this nature, the court may deny further proceedings if it finds they are unlikely "to produce fruitful evidence." (*Ibid*.)

The Attorney General argues Howard already had sufficient opportunity to present youth-related information at his 2019 parole hearing. He also suggests that "by declining to seek a *Franklin* hearing before he was denied parole, [Howard] . . . evinced his belief that the record required no further development." As to the first argument, as explained above, the trial court may ultimately conclude it is unlikely that Howard will be able produce additional fruitful evidence. (See *Cook*, *supra*, 7 Cal.5th at p. 459.) But

11

the court made that decision prematurely without giving Howard a meaningful opportunity to describe the evidence he sought to preserve.

As to the second argument, a defendant is not required to request a *Franklin* proceeding prior to a parole hearing. (*Cook*, *supra*, 7 Cal.5th at p. 459.) Even if Howard believed prior to his parole hearing that the record required no further development, he may have changed his mind after its conclusion. We see no reason to categorically bar Howard from exercising his opportunity to preserve evidence simply because he failed to do so prior to his 2019 parole hearing.

We are also unpersuaded by the Attorney General's citation to *People v. Medrano* (2019) 40 Cal.App.5th 961. In *Medrano*, the appellate court rejected the defendant's request on direct appeal to remand the case so he could introduce youth-related evidence at sentencing. (*Id*. at pp. 963, 968-969.) The court noted that *Franklin* had been "in place for one and one-half years before [the defendant] was sentenced. The record [did] not indicate that [the defendant's] opportunity to exercise that right [during sentencing] was inadequate in any respect. Rather, it appears that he merely failed . . . to exercise it." (*Id*. at p. 967.) Significantly, the court also found the defendant's failure to present youth-related evidence at sentencing did not foreclose his ability to do so in the future. Under *Cook*, he could still file a *Franklin* motion and obtain the same relief even if his judgment became final. Thus, the court affirmed the judgment "without prejudice to [the defendant] filing a motion 'for a *Franklin* proceeding.'" (*Id*. a pp. 968-969.)

Unlike *Medrano*, this case involves an appeal arising from the denial of a *Franklin* motion, not a direct appeal of a sentence. Howard was unable to rely on *Franklin* during his sentencing, as it was decided decades later. More importantly, Howard has no other avenue to pursue a *Franklin* proceeding. Denying his *Franklin* motion completely forecloses his opportunity to preserve evidence in the record before his next parole hearing. This distinction is material and separates this case from *Medrano*.

12

In summary, Howard was not given a sufficient opportunity to preserve evidence under *Franklin* since the court denied his motion on its face. Given the low threshold for such motions, at a minimum, the court should have afforded Howard the opportunity to offer proof of any relevant, noncumulative evidence he sought to preserve. (See *Cook*, *supra*, 7 Cal.5th at p. 459.) The court shall provide Howard this opportunity on remand. It may then determine whether further proceedings are warranted.

As for Howard, on remand, we reiterate the scope of evidence relevant to a *Franklin* proceeding is limited. A *Franklin* proceeding is intended to *preserve* evidence relevant to youth-related factors. (*Cook*, *supra*, 7 Cal.5th at p. 459.) The evidence must also "meaningfully add[] to the already available record." (*Ibid*.) Howard cannot use a *Franklin* proceeding to introduce evidence outside these parameters.

III

DISPOSITION

The order is reversed. The matter is remanded to the trial court for further proceedings as directed within this opinion.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

13